# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

ATITH H. MEHTA, et al.,      *

      Plaintiffs,      *

      vs.      *      CV 510-001

RICHARD R. FOSKEY, et al.,      *

      Defendants.      *

## ORDER

Presently before the Court is a Motion to Dismiss by Defendants Gourley, Britt, and Osburn (the "Canine Handlers"). Dkt. No. 33. Also before the Court is a Motion to Dismiss by Defendants Murray and Hewett (the "Alma Officers"). Dkt. No. 44. For the reasons stated below, both motions to dismiss are **GRANTED in part and DENIED in part.**

## BACKGROUND

When considering a motion to dismiss, the Court must "accept all well-pleaded facts as true." Solymar Invs., Ltd. v. Banco Santander S.A., 672 F.3d 981, 985 n.1 (11th Cir. 2012). The relevant events in this case began when a "concerned citizen" approached Bacon County Deputy Sheriff John M. Bloodworth ("Bloodworth") about marijuana trafficking at a local

convenience store, the 3-D Chevron Station in Alma, Georgia ("3-D Store"). Am. Compl. ¶ 20, Dkt. No. 25. The 3-D Store sold a number of items, including smoking devices, over-the-counter cold medicine, and pornographic magazines and DVDs. According to the informant, a juvenile went to the 3-D Store and asked for a pack of cigarettes, but instead was given a cigarette box containing a marijuana bud. The informant claimed that "an Indian male" gave the juvenile the drugs. The informant then gave Bloodworth the alleged contraband, which appeared to be a small quantity of marijuana. The substance was not tested.

Bloodworth began conducting surveillance on the 3-D Store that same day. Bloodworth observed a male of Indian descent working at the 3-D Store counter. He also observed a vehicle, a silver Acura, in the parking lot of the 3-D store. Bloodworth ran a check of the Acura's license tag, which revealed that the vehicle was registered to Plaintiff Atith H. Mehta ("Mehta"). Bloodworth inquired to see if the Georgia Crime Information Center listed any arrest warrants for Mehta, and found none.

The next day, Bloodworth contacted Defendant John Murray ("Murray"), Captain of the Alma Police Department. Bloodworth asked Murray for information pertaining to the 3-D Store's business license. Murray provided Bloodworth with copies of the 3-D Store's application for a business license and the business license itself. Bloodworth also obtained Mehta's "personal

statement, photocopies of Mehta's Georgia driver's license, his Permanent Resident Card, and his Social Security Card." Am. Compl. ¶ 28.

Later that day, Bloodworth petitioned for a search warrant related to his investigation. The petition sought authorization to search the 3-D Store, Mehta's vehicle, and Mehta's person. Bloodworth stated that he had a "reasonable belief that marijuana [was] concealed" at the identified locations. Am. Compl. ¶ 32. The petition listed the targets of the search as "marijuana, currency, packaging materials, weighing devices, and 'other fruits of [sic] pertaining to the sales and/or distribution of marijuana.'" Am. Compl. ¶ 30. A Bacon County Magistrate Judge issued the search warrant that day.[1]

Bloodworth, along with several other law enforcement officers, executed the search warrant the same day. It appears from Plaintiffs' Amended Complaint that Bloodworth and Bacon County Sheriff Richard Foskey ("Foskey") led the search, but that police officers from the city of Alma and canine handlers employed by the state of Georgia also participated in the search. The search lasted several hours, and for some portion of the search Mehta was detained outside the store. Later, Mehta was brought back inside so that Bloodworth and Foskey

---

[1] The parties did not submit the search warrant to the Court. Based on the Amended Complaint, there is no indication that the warrant was issued other than as requested.

AO 72A
(Rev. 8/82)

could question him. Plaintiffs claim that law enforcement officers went through the public areas of the store, as well as the manager's office, sifting through file cabinets and desk drawers. During the search, one of the officers asked how to turn off the store's security surveillance system. The officers seized pornographic magazines and DVDs, as well as money from the 3-D Store's cash register and from Mehta's wallet. The officers did not seize any smoking devices or cold medicine. Along with the search of the 3-D Store, the officers searched Mehta's vehicle "inside and out, using [a] drug dog." Am. Compl. ¶ 43.

The officers also searched Mehta's person, including his cell phone. Plaintiffs claim the officers perused Mehta's saved contacts, asking how he knew various individuals. The officers interrogated Mehta about the 3-D Store's cold medicine inventory. When Mehta indicated that he wanted to speak to a lawyer, Bloodworth allegedly replied, "If you call your lawyer you'll be in more trouble." Am. Compl. ¶ 39.

At some point, the officers took Mehta to the motel where he was residing. Notably, there is no indication that the search warrant authorized a search of Mehta's residence. Upon arrival at the motel, Bloodworth told Mehta that if he did not consent to a search of the motel room, the officers would "get a search warrant in about 30 minutes." Am. Compl. ¶ 45. Mehta

then "reluctantly" signed a form consenting to the search of the motel room. Mehta claims that although he did sign the consent form, he "did not do so intelligently or voluntarily." Am. Compl. ¶ 45.

During the search of the motel room, Bloodworth found Mehta's personal laptop computer. Plaintiffs claim, upon "information and belief," that Bloodworth searched the computer, accessing Mehta's private files and links. Am. Compl. ¶ 46. Foskey and Bloodworth continued interrogating Mehta about his involvement in marijuana trafficking. Foskey told Mehta that he would drop any criminal charges if Mehta closed his business and left town. Am. Compl. ¶ 48. Plaintiffs claim, again upon "information and belief," that the other individual Defendants heard Foskey's "threats," but did not intervene. Am. Compl. ¶ 49.

Despite not finding any contraband, the officers conducting the search arrested Mehta for distribution of marijuana. Mehta was taken to the Bacon County Jail, where he was booked then released on bond. At some point, Foskey allegedly offered "to drop the state criminal charges if the Sheriff's Office could keep the money seized during the searches." Am. Compl. ¶ 48. Mehta declined the offer. Id. Later, Foskey "offered to drop the charge for just one-half of the money seized." Id. Mehta declined a second time. Id. Approximately, eleven months after

the arrest, the charges against Mehta were dismissed by the Bacon County District Attorney. Am. Compl. ¶ 53. It is not clear from the Amended Complaint whether Mehta recovered all of the seized money, half of it, or none of it.

Mehta claims several detrimental consequences flowed from the search, arrest, and prosecution. Mehta had to hire a criminal defense attorney to defend against the charges. Mehta claims that he has suffered "mental and emotional distress, anxiety, humiliation, outrage, loss of professional and personal reputation." Am. Compl. ¶ 54. Mehta also claims that the 3-D Store has experienced a decline in business because of the negative exposure related to these events. Ultimately, Mehta and his father decided to sell the business at a loss due to the controversy.

Mehta further claims that the arrest has had adverse impacts on his immigration prospects and his ability to travel abroad. Mehta claims that he has been detained twice by the Department of Homeland Security at two airports because of suspicion created by the arrest. Am. Compl. ¶¶ 61, 64. The Department of Homeland Security also required Mehta to report frequently on the status of the charges, and threatened deportation to India if the matter was not resolved quickly.

Mehta filed this suit against twelve defendants: Bacon County Sheriff Richard Foskey; Bacon County Sheriff's Deputy

AO 72A
(Rev. 8/82)

John Bloodworth; Bacon County Chief Sheriff's Deputy Mark Cothern; Bacon County Chief Investigator Cameron O'Neal; Bacon County Deputy Sheriff Andy Batten; Bacon County Deputy Sheriff Shane Taylor; Canine Handler Matt Gourley; Canine Handler Kevin Britt; Canine Handler Mark Osburn; the City of Alma; City of Alma Police Department Captain John Murray; and City of Alma Police Department Sergeant Mike Hewett. Mehta asserts ten claims against the Defendants, but only the first two are relevant for present purposes.[2] Count One asserts a cause of action for false arrest in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983. Count Two asserts a cause of action for unlawful search and seizure in violation of the Fourth Amendment, also pursuant to § 1983. Counts One and Two are asserted against all Defendants except for the City of Alma.

Two groups of Defendants have moved to dismiss Plaintiffs' claims against them: Defendants Murray and Hewett, the City of Alma Police Officers (the "Alma Officers"), Dkt. No. 44, and Defendants Courley, Britt, and Osburn, the Ware State Prison employees (the "Canine Handlers"), Dkt. No. 33. The motions to dismiss are based primarily on the Plaintiffs' failure to state a claim upon which relief can be granted, pursuant to Federal

---

[2] The Canine Handlers and Alma Officers only seek dismissal of Counts One and Two as those counts are the only counts that pertain to them.

Rule of Civil Procedure 12(b)(6), and the Defendants' assertions of qualified immunity.

## LEGAL STANDARD

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S 662, 679 (2009)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." Id. Therefore, the court should ignore "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." Am. Dental Ass'n, 605 F.3d at 1290. Importantly, complaints against defendants who assert the defense of qualified immunity are held to the same plausibility standard as other complaints. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).[3]

---

[3] Earlier in this dispute, the parties sparred over the issue of whether the Eleventh Circuit imposes a heightened pleading standard in § 1983 cases involving qualified immunity. Because the United States Supreme Court and the Eleventh Circuit have clearly rejected such a heightened pleading standard, and because the parties no longer dispute this point, the Court evaluates the Defendants' motions to dismiss under an ordinary motion to dismiss standard. See Alma Officers' Mot. Dismiss, Dkt. No.44, at 3.

In determining plausibility, the court should "draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." Am. Dental Ass'n, 605 F.3d at 1290 (quoting Iqbal and relying on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

"A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Hardy v. Broward Cnty. Sheriff's Office 238 F. App'x 435, 439 (11th Cir. 2007) (citing Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022-23 (11th Cir. 2001) (citing several examples).

---

Further discussion of the now rejected heightened pleading standard is unnecessary.

AO 72A
(Rev. 8/82)

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[4]  Hardy, 238 F. App'x. at 439 (11th Cir. 2007)(citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).  "The burden then 'shifts to the plaintiff to show that qualified immunity is not appropriate.'"  Id.  "The Supreme Court has set forth a two-part test for the qualified immunity analysis."  Id. (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).  A court must first determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Id. (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)).  "If a constitutional right would have been violated under the plaintiff's version of the facts, the next, sequential step is to ask whether the right was clearly established."  Vinyard, 311 F.3d at 1349 (internal quotation marks and citations omitted). Dismissal of a complaint under Rule 12(b)(6) based on qualified immunity is appropriate "where, (1) from the face of the

---

[4] Discretionary authority includes "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'"  Roberts v. Spielman, 643 F.3d 899, 903 (11th Cir. 2011).  In the present case, there is no dispute over whether the Defendants were acting within their discretionary authority in executing the search warrant and arresting Mehta.  Moreover, any challenge that the Defendants were not acting in their discretionary authority would be unavailing; it is clear that performing searches and assisting in arrests are legitimate job-related functions, within the power of these law enforcement bodies.  See Pair v. City of Parker, Fla., Police Dept., 383 F. App'x 835, 839 (11th Cir. 2010); O.C.G.A. § 35-8-2(8)(A) (defining peace officers as individuals who have the power of arrest and the power to investigate and detect crime).

AO 72A
(Rev. 8/82)

complaint, (2) [the court] must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim - given the alleged circumstances - was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted." Marsh, 268 F.3d at 1023. Importantly, the qualified immunity determination should be based on the "four corners of the complaint." St. George, 285 F.3d at 1337 (citing Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000)).

## DISCUSSION[5]

### I. Unlawful Search and Seizure

The Alma Officers and the Canine Handlers both seek dismissal of the Plaintiffs' § 1983 unlawful search and seizure claims. Plaintiffs' Amended Complaint asserts that the Canine Handlers and Alma Officers participated in some aspects of the search and were merely present for others.[6] The Amended Complaint alleges that the Alma Officers participated in the

---

[5] The Canine Handlers filed their motion to dismiss before the Alma Officers filed their motion. The Alma Officers incorporated by reference all arguments and authority set forth in the Canine Handlers' brief and reply. Dkt. No. 44, at 11. Further, the Alma Officers did not raise new arguments or novel legal theories in support of their motion to dismiss compared to those asserted by the Canine Handlers. Therefore, the Court addresses both motions concurrently.

[6] Plaintiffs' Amended Complaint also asserts that Alma Police Captain John Murray provided information to Bloodworth during Bloodworth's investigation leading up to the search. Am. Compl. ¶¶ 27, 28. Plaintiffs do not, however, assert any claim related to the provision of this information.

search of the 3-D Store, and that the Canine Handlers "searched the office and the rest of the [3-D Store]." Am. Compl. ¶¶ 35, 41.[7] The Amended Complaint also states "[t]he individual defendants searched Mehta's car inside and out, using the same drug dog from the Ware State Prison's Canine Unit." Am. Compl. ¶ 43. At this stage, the Court must construe paragraph 43 of the Amended Complaint as meaning exactly what it says – that the Alma Officers and the Canine Handlers personally participated in a search of the interior and exterior of Mehta's vehicle. Likewise, the Amended Complaint alleges that "the defendants searched Mehta's motel room." Am. Compl. ¶ 51. Again, at this stage, the Court must construe paragraph 51 of the Amended Complaint as meaning what it says – that the Canine Handlers and Alma Officers personally participated in the search of Mehta's motel room. The Amended Complaint seems to allege Mehta's person was searched, but does not identify who conducted the search. See Am. Compl. ¶¶ 81, 82. The Amended Complaint makes clear that Bloodworth – not the other Defendants – searched Mehta's cell phone and laptop computer. Am. Compl. ¶¶ 38, 46. In sum, Plaintiffs' Amended Complaint plausibly alleges that the

---

[7] Plaintiffs' Amended Complaint makes clear that the Bacon County Sheriff's Officers seized pornographic magazines and DVDs during the search, and that the Alma Officers photographed these items. Am. Compl. ¶ 35. The Amended Complaint addresses the seizure of the magazines and DVDs in Count 3, which is asserted against Foskey, Bloodworth, and O'Neal, not the Alma Officers or the Canine Handlers. Accordingly, this Order addresses the Alma Officers and Canine Handlers' participation in the search of the store, but makes no comment regarding the seizure of the magazines and DVDs.

Canine Handlers and the Alma Officers personally participated in the search of the 3-D Store, the car, Mehta's person, and his motel room, but alleges that they were merely present for the search of Mehta's phone and his laptop.

## A. Standing

The Canine Handlers question the Plaintiffs' standing to assert an unlawful search claim. Dkt. No. 33, at 11. The Canine Handlers argue that the individual Plaintiff, Mehta, has no standing to challenge the search of the 3-D Store and the business Plaintiff, the 3-D Store, has no standing to challenge the search of Mehta's person, his car, his cell phone, his computer, or his motel room. Based on this argument, the Canine Handlers seek dismissal of any claims asserted by either Plaintiff for which that Plaintiff does not have standing. Plaintiffs did not respond to the Canine Handlers' standing arguments.

Although both the 3-D Store and Mehta are named Plaintiffs in this action, it is not clear from the Amended Complaint that Mehta individually challenges the search of the 3-D Store. Similarly, it is not clear that the 3-D Store challenges the search of Mehta's person, car, phone, computer, and motel room. Rather it appears that both the store and Mehta are named so that Plaintiffs would not face standing challenges. To construe the Amended Complaint as Defendants do would require the Court

to go out of the way to find a lack of standing for some of the claims asserted. The Court has no reason to engage in such a labored construction. As such, the Court understands the Amended Complaint as one Plaintiff, the 3-D Store, challenging the search of the store premises, and the other Plaintiff, Mehta, challenging the search of his person, his phone, his car, his computer, and his motel room.

### B. The 3-D Store, Mehta's Car, and Mehta's Person

Plaintiffs' Amended Complaint alleges that the Alma Officers and the Canine Handlers personally participated in the search of the 3-D Store, Mehta's Car, and Mehta's person. These are precisely the areas covered by the magistrate's search warrant. The Canine Handlers and Alma Officers seek dismissal of the claims related to these searches on various grounds.[8] First, the Defendants argue that the Plaintiffs have failed to state a claim because the searches were conducted pursuant to a lawfully issued search warrant, which was supported by probable cause and sufficiently particularized. Dkt. No. 33, at 14-19. In the alternative, the Defendants argue that they are entitled

---

[8] The Canine Handlers argue that dog sniffs of the exterior of Mehta's vehicle and in the public areas of the 3-D Store are not searches for the purposes of the Fourth Amendment and therefore Plaintiffs' § 1983 claim based on that conduct does not state a claim for relief. Dkt. No. 33, at 19. However, the Amended Complaint alleges that the "individual defendants also searched Mehta's car inside and out," Am. Compl. ¶ 43, and that the Canine Handlers, specifically, "searched the office and the rest of the store," Am. Compl. ¶ 41. Accordingly, the Court construes the Amended Complaint as alleging that the Canine Handlers personally participated in the search of Mehta's vehicle and the entire 3-D Store premises, rather than limiting the allegations to a few dog sniffs.

to qualified immunity because there was arguable probable cause to support the search warrant and because the search warrant was not so facially deficient that a reasonable officer would consider that it was invalid. Dkt. No. 33, at 29-30. Plaintiffs argue that the search warrant was not supported by probable cause, or even arguable probable cause. Dkt. No. 40, at 12. Plaintiffs further argue that an uncorroborated statement from an unnamed third party is not sufficient to establish probable cause for a warrant. Id. In support of their position, Plaintiffs cite a number of Georgia cases dealing with the suppression of evidence in criminal prosecutions. Id. at 12-13.

The defense of qualified immunity "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotations omitted). "Where [an] alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Messerschmidt v. Millender, 132 S.Ct. 1235, 1245 (2012). However, a defendant exercising a search warrant is not entitled to the defense where "it is obvious that no reasonably competent officer would have

AO 72A
(Rev. 8/82)

concluded that a warrant should issue." Id. (citing United States v. Leon, 468 U.S. 897 (1984)). The threshold for establishing this obviousness is a "high one." Id. Indeed, a defendant relying on a magistrate-issued search warrant is entitled to qualified immunity unless it would have been "plainly incompetent" to rely on the warrant because the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id.

In this case, even taking all facts pled in the Amended Complaint as true, there is no indication that the magistrate-issued warrant was substantially lacking in indicia of probable cause. Rather, the warrant was based on statements and physical evidence presented in person to Bloodworth. By no means can the Court say it is entirely unreasonable or plainly incompetent for an officer to believe that a search warrant is supported by probable cause, where the warrant is based on direct statements to a law enforcement officer that illegal drugs are being sold at a specific location, and the officer is given physical evidence of the illegal transaction. Plaintiffs failed to show that the Canine Handlers and the Alma Officers are not entitled to qualified immunity for the search of the 3-D Store; Plaintiffs have not pled facts showing it would have been plainly incompetent to rely on the magistrate's warrant. Nor have Plaintiffs pled any facts indicating that the Canine

Handlers or the Alma Officers were plainly incompetent in relying on the warrant to search Mehta's person, his vehicle, and the 3-D Store. As such, the Canine Handlers and the Alma officers are entitled to qualified immunity from liability arising from the search of the 3-D Store, Mehta's person, and Mehta's vehicle.

Plaintiffs also argue broadly that the magistrate-issued warrant was an impermissible "general" warrant because it authorized the search of three separate locations, without probable cause to search each individual location. Am. Compl. ¶ 82. In effect, Plaintiffs challenge that the search warrant was not sufficiently particularized with regards to the locations to be searched. Again, the Court finds no indication in the Amended Complaint that the warrant was so overly broad that it would have been plainly incompetent for the Canine Handlers and the Alma Officers to rely on it in conducting a search of the 3-D Store, Mehta's person, and Mehta's vehicle. The warrant authorized the search of areas closely associated with Mehta: his person, his business, and his vehicle, and the warrant adequately identified the contraband and related items. See, e.g., United States v. Fernandez Martinez, 317 F. App'x 929 (11th Cir. 2009) (holding that a warrant authorizing the search of a residence, vehicles at the residence, and all persons found in the residence was not overly broad, given that search was

AO 72A
(Rev. 8/82)

limited to places were drugs or weapons might be found). The warrant was not overly broad in authorizing the search of Mehta, his car, and the 3-D Store.

In sum, the warrant was not so lacking in indicia of probable cause or so facially overly broad that the Canine Handlers and the Alma Officers were plainly incompetent in relying on it. Thus, the Canine Handlers and the Alma Officers are entitled to qualified immunity for claims related to searches conducted pursuant to the warrant.

### C. Mehta's Cell Phone and Laptop

Plaintiffs assert that Bloodworth searched Mehta's cell phone and laptop. Am. Compl. ¶¶ 38, 46. The Amended Complaint does not allege that the Alma Officers or Canine Handlers participated in the search of these items. Nonetheless, Plaintiffs argue that the Alma Officers and the Canine Handlers can be held liable for failing to intervene to prevent these searches. See Dkt. No. 48, at 19 ("The Alma officers violated the Fourth Amendment when they witnessed other law enforcement officers search Mehta's electronic storage devices (cell phone and laptop computer) but did nothing to stem the effort.").[9] The Canine Handlers and Alma Officers seek dismissal, arguing that

---

[9] Plaintiffs make this argument in their "Brief Opposing Motion to Dismiss Filed by Defendants Murray and Hewett." Dkt. No. 48. Plaintiffs do not, however, assert this theory in their Amended Complaint or in any briefing on the Canine Handlers' Motion to Dismiss. Because the Court finds the theory lacking in merit, it is unnecessary to address whether Plaintiffs intended to argue this theory in reference to the Canine Handlers as well.

the Plaintiffs have not set forth an unlawful search claim related to the cell phone and laptop because such a claim would require personal participation in the searches by the Defendants. Dkt. No. 33, at 13. Alternatively, the Canine Handlers and Alma Officers argue that they are entitled to qualified immunity because there is no clearly established law requiring a law enforcement officer to intervene to prevent an unlawful search by another officer. Dkt. No. 33, at 32.

As noted previously, once the Defendants establish that they were acting in their discretionary authority – which is without question here – the Plaintiffs have the burden of persuasion to establish that the Defendants are not entitled to qualified immunity. To do so, Plaintiffs must show that the Amended Complaint alleges a constitutional violation of clearly established law. Plaintiffs cannot point to any controlling authority that requires a law enforcement officer to intervene to prevent another officer from performing an unlawful search. In their briefing, Plaintiffs point to case law establishing that "bystander liability" – i.e., that law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers – exists as a general proposition, and is distinct from supervisory liability. See Dkt. No. 48, at 9 (citing Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203

(4th Cir. 2002)). Plaintiffs further point to Eleventh Circuit case law establishing that a law enforcement officer can be liable for failing to intervene in another officer's use of excessive force. Id. at 10 (citing Sanders v. City of Union Springs, 207 F. App'x 960, 966 (11th Cir. 2006); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)). Plaintiffs have not, however, demonstrated that the law was "clearly established" that a law enforcement officer can be held liable under § 1983 for failing to prevent another officer's unlawful search.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' [It is not necessary to point to] a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2078 (2011). The fact that district courts within the same district in the Eleventh Circuit seem to come out differently on the present issue shows that the issue is by no means "beyond debate." Compare Lewis v. Blue, 2010 WL 730210, at *6 (M.D. Ala. Mar. 3, 2010) ("case law seems to indicate that failure to intervene claims are cognizable only when related to excessive force violations") with Sims ex rel. Sims v. Forehand, 112 F. Supp. 2d 1260, 1274

(M.D. Ala. 2000) (holding that an officer could be held liable for failing to intervene in preventing an unlawful strip search).

Even assuming that law enforcement officers have a duty to intervene in unlawful searches when they are in a position to do so, it cannot be said that the Canine Handlers and Alma Officers violated clearly established law by failing to intervene in these particular circumstance. See, e.g., Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999) (holding that while case law generally indicates that an officer can be held liable for failing to intervene in another officer's use of excessive force, the absence of authority from the Supreme Court or the Eleventh Circuit dealing with similar circumstances supported granting qualified immunity to a defendant). The facts alleged in this case are distinct from any case cited by Plaintiffs. The Canine Handlers and Alma Officers participated in a search, pursuant to a lawfully issued warrant, following Bloodworth's informant interview and investigation. The Canine Handlers and Alma Officers worked for completely separate political subdivisions from Bloodworth. The law was and is far from clearly established that the Canine Handlers and Alma Officers were under a constitutional duty to confront, challenge, and prevent Bloodworth from inspecting Mehta's phone and laptop. Accordingly, the Canine Handlers and the Alma Officers are

entitled to qualified immunity on Plaintiffs' claims related to the phone and laptop.

### D. Mehta's Motel Room.

The Canine Handlers and Alma Officers also seek dismissal of Plaintiffs' claims arising from an allegedly unlawful search of his motel room. Dkt. No. 33, at 31-32. Mehta concedes that he consented to the search of his motel room, but contends that the consent was coerced. According to Plaintiffs' Amended Complaint, "Bloodworth told Mehta that if he did not allow them to search both his motel room and his laptop computer, 'We'll get a search warrant in about 30 minutes.'" Am. Compl. ¶ 45. Mehta then signed a "Consent to Search" form, provided by the officers. Ultimately, Mehta contends that he consented to the search, but did not do so voluntarily or intelligently. The Defendants argue that the claims related to the search of the motel room should be dismissed because (1) the Amended Complaint fails to state a claim given that Mehta consented to the search, and (2) the Defendants are entitled to qualified immunity because there was arguable consent[10] to conduct the search. Dkt. No. 33, at 21, 31.

---

[10] Defendants argue "[a] law enforcement officer is entitled to qualified immunity for a warrantless search if there was arguable consent to the search." Canine Handlers' Mot. Dismiss, Dkt. No. 33, at 31 (citing Hanie v. City of Woodstock, Ga., 2008 U.S. Dist. LEXIS 12247, 20 (N.D. Ga. Feb. 19, 2008). Hanie does not hold that qualified immunity may be based on "arguable consent," nor does any controlling authority.

"[P]olice may conduct a warrantless search of [a] motel room so long as the occupant voluntarily consents." United States v. Smith, 199 F. App'x 759, 763 (11th Cir. 2006) (citing United States v. Butler, 102 F.3d 1191, 1197 (11th Cir. 1997)). "In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances." United States v. Simms, 385 F.3d 1347, 1355 (11th Cir. 2004). Importantly, the voluntariness inquiry is a "heavily fact-dependent" one. Hudson v. Hall, 231 F.3d 1289, 1297 (11th Cir. 2000) (quoting Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). "To determine whether consent was given voluntarily, [the court] consider[s]: (1) whether the defendant was free to leave; (2) whether coercive police procedures were employed; (3) the extent of the defendant's cooperation or awareness of a right to refuse consent; (4) whether the defendant could refuse to consent; (5) the extent of the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence would be found." Smith, 199 F. App'x at 763 (citing United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002)). Compare United States v. Tovar-Rico, 61 F.3d 1529, 1535-36 (11th Cir. 1995)(holding that defendant's consent was involuntary where defendant consented to search following a warrantless entry, and officers explained that absent consent, the officers would obtain a warrant) with United States of America v. Welch, 2012

WL 2122163, at *4 (11th Cir. June 13, 2012) (holding that defendant voluntarily consented where defendant's only basis for coercion was that the officers said that if he did not consent they would get a warrant, which "would take a while").

Here, Plaintiffs' facts supporting their claim that Mehta's consent was coerced are exceptionally thin, but not so thin that Plaintiffs have failed to assert a plausible claim for relief. Plaintiffs have pled that Mehta was subjected to a multi-hour search by up to seven law enforcement officers and canine units. Mehta was interrogated and his store's merchandise was seized. According to Mehta, Foskey had strongly discouraged Mehta from contacting his legal counsel and seized money from Mehta's wallet. At this time, the Court is ill-equipped to make a "heavily fact-dependent" inquiry into the totality of the circumstances of Mehta's consent, and determine that his consent was voluntary.

This is not to say that the claim will survive summary judgment. It may be that the full facts authorize judgment in favor of the defendants at the summary judgment phase. However, Plaintiffs' claims against the Canine Handlers and the Alma Officers for their participation in the search of Mehta's motel room adequately state a claim upon which relief may be granted. The Defendants' motions are denied on this issue, at this time.

## II. Unlawful Arrest

Plaintiffs also assert a cause of action against the Alma Officers and the Canine Handlers for the unlawful arrest of Mehta. See Am. Compl. ¶¶ 73-78 ("Count I"). The parties agree that Bloodworth carried out the arrest of Mehta.[11] However, Plaintiffs argue that the other officers on the scene can be held liable for Bloodworth's conduct because those officers failed to intervene to prevent the arrest. The Canine Handlers and the Alma Officers argue that there is no cause of action under § 1983 for failing to intervene to prevent an unlawful arrest, and even if there was such a cause of action, the Defendants are entitled to qualified immunity because they did not violate clearly established law.

Plaintiffs have pointed to no controlling authority that requires a law enforcement officer to intervene to prevent another officer from performing an unlawful arrest.[12] Defendants

---

[11] Plaintiffs' Amended Complaint uses some general language in describing who arrested Mehta, i.e., "these defendants . . . arrested Mehta." Am. Compl. ¶ 51. However, ultimately, the Amended Complaint makes clear that the Alma Officers and the Canine Handlers did not personally participate in the arrest of Mehta. See Am. Compl. ¶ 77 ("To the extent that the Alma Police Officers and Ware Prison Officers did not physically arrest and transport Mehta to jail, they are liable for failing to intervene to prevent the unjustifiable arrest of Mehta."). Plaintiffs' briefing clarifies this point by demonstrating that Plaintiffs are seeking recovery from these Defendants based solely on a failure to intervene theory. See Dkt. No. 40, at 14-16; Dkt. No. 48, at 8.

[12] Plaintiffs have cited authority from other Federal Courts of Appeals applying the failure to intervene or "bystander" theory of liability in § 1983 cases, and Eleventh Circuit cases applying the theory in the context of excessive force claims. Dkt. No. 48, at 9. Plaintiffs have not cited any binding authority, and the Court is aware of none, from the Eleventh Circuit or the Supreme Court, holding that a law enforcement officer can be liable

AO 72A
(Rev. 8/82)

rightfully acknowledge a single unpublished opinion from the Eleventh Circuit indicating that there is a duty to intervene to prevent an unlawful arrest in some situations. See Lepone-Dempsey, 159 F. App'x 916, 920 (11th Cir. 2005) (unpublished) ("we do not believe the district court erred in concluding that a duty to intervene in an unlawful arrest was clearly established"). However, the weight of Lepone-Dempsey is questionable. In that case, the court was faced with an excessive force claim "predicated solely on officers' actions in arresting [the plaintiff]" as well as an unlawful arrest claim. Id. at 918. The court based its conclusion about failure to intervene liability on case law establishing that excessive force claims should be subsumed into unlawful arrest claims, where the excessive force claim is based on the unlawfulness of the arrest. Thus, it is not clear if the court in Lepone-Dempsey intended to extend failure to intervene liability to all unlawful arrest situations, or if the court meant that liability for failure to intervene in an unlawful arrest is appropriate where there is also an allegation of excessive force. Lepone-Dempsey is an unpublished opinion and does not clearly establish

---

under § 1983 for failing to intervene when another officer performs an unlawful arrest.

a requirement of intervention in a scenario like the one set out this Amended Complaint.[13]

Plaintiffs also rely on <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 737 (11th Cir. 2010). On one hand, <u>Brown</u> very clearly states, "[m]erely being present with the arresting officers at the scene is not enough [to establish § 1983 liability], unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action." <u>Id.</u> Likewise, <u>Brown</u> states, "Because [the defendant] did not arrest [the plaintiff] and had no supervisory control over the officer who did, qualified immunity is appropriate." <u>Id.</u> On the other hand, <u>Brown</u> states, – and this is the portion Plaintiffs hang their argument on – "There was no active personal participation by [the defendant] in [the plaintiff's] arrest, *much less an opportunity to intervene* in [the arresting officer's] arrest at the scene." <u>Id.</u> (emphasis added). Plaintiffs seem to argue that this off-hand mention of a defendant's opportunity to intervene in an unlawful arrest clearly establishes that § 1983

---

[13] Only a few other courts in the Eleventh Circuit have cited <u>Lepone-Dempsey</u> on the failure to intervene issue, and those courts have done so inconsistently. <u>See, e.g.</u>, <u>Williams v. Valaer</u>, 2012 WL 1379842, at *7 (S.D. Ala. Mar. 20, 2012) (relying on <u>Lepone-Dempsey</u> for the following conclusions: "There is a duty to intervene when excessive force is being used. But there is no duty to stop an unlawful arrest."); <u>Valentine v. Bush</u>, 2012 WL 27416, at *4 (N.D. Ga. Jan. 4, 2012) (citing <u>Lepone-Dempsey</u> for the proposition that "it [is] well-settled law in this Circuit that physical participation in the actual arrest is not required to state a cause of action against a police officer for unlawful arrest; on the contrary, an officer may be held liable for unlawful arrest where the officer contributes to the arrest otherwise, such as by participating in the events leading up to it or encouraging it by failing to intervene," but not specifically addressing failure to intervene liability).

liability can be premised on an officer's failure to intervene in another officer's unlawful arrest. However, the Court reads Brown differently. The quoted passage from Brown uses the expression "much less an opportunity to intervene" as a linguistic tool to highlight how little personal participation the defendant had in the arrest in that particular case. The passage shows how far below the required minimum level of involvement that particular defendant exhibited. Read in whole, Brown more accurately shows that personal participation in an arrest, or supervisory control over the arresting officer, is required in order to establish liability for unlawful arrest – mere presence is not enough.

However, even assuming Plaintiffs are correct, and that law enforcement officers have a duty to intervene in other officer's unlawful arrests, it cannot be said that the Canine Handlers or Alma Officers violated clearly established law in this case. See, e.g., Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999) (holding that while case law generally indicates that an officer can be held liable for failing to intervene in another officer's use of excessive force, the absence of authority from the Supreme Court or the Eleventh Circuit dealing with similar circumstances supported granting qualified immunity to a defendant). The Canine Handlers and Alma Officers were asked to come to the 3-D Store and Mehta's motel room in order to assist

AO 72A
(Rev. 8/82)

the Bacon County officers' search.  Ultimately, Sheriff Foskey and Deputy Sheriff Bloodworth decided to arrest Mehta. Plaintiffs argue that the Canine Handlers and the Alma Officers were under a duty to confront the Sheriff and Deputy Sheriff – law enforcement officers from a completely separate political subdivision – challenge the constitutionality of the arrest, then intervene in the conduct.  There is no allegation that the Canine Handlers or the Alma Officers had any knowledge of the facts leading up to the arrest, such as the results of Bloodworth's investigation, or other circumstances motivating Bloodworth's decision to arrest Mehta.

The Court is at pains to discern a clear rule in the Eleventh Circuit case law regarding an officer's liability for failing to intervene in an unlawful arrest; thus, it is improper to say that "the contours of the right . . . [are] sufficiently clear that a reasonable official would understand" that failing to intervene in an unlawful arrest violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Accordingly, the Canine Handlers and Alma Officers are entitled to qualified immunity from Plaintiffs' claims based on Mehta's allegedly unlawful arrest.

## CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss are **GRANTED in part** and **DENIED in part**.  Plaintiffs'

AO 72A
(Rev. 8/82)

Count I, for Mehta's arrest, is dismissed, but only to the extent it is asserted against the Alma Officers and Canine Handlers. Plaintiffs' Count II, based on unlawful searches, is dismissed with regards to the Alma Officers and Canine Handlers, except to the extent that those claims are based on the search of Mehta's motel room.

**SO ORDERED**, this 29th day of June, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA