# In the United States District Court
## for the Southern District of Georgia
## Waycross Division

ATITH H. MEHTA; CK GAS, LLC d/b/a 3-D   *
CHEVRON STATION,   *
  *
    Plaintiffs,   *
  *
    vs.   *     CV 510-001
  *
RICHARD R. FOSKEY; and JOHN M.   *
BLOODWORTH,   *
  *
  *
    Defendants.   *

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants Foskey and Bloodworth. See Dkt. No. 74. For the reasons set forth below, Foskey and Bloodworth's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

## BACKGROUND

Plaintiff Atith Mehta, an Indian male, had an ownership interest in a convenience store and gas station, called the 3-D Chevron Station ("Convenience Store"), located in Alma, Georgia. In early January 2008, Taylor Boatright, a sixteen-year-old sophomore at Bacon County High School, went to the Convenience Store to purchase cigarettes. Dkt. No. 93, ¶¶ 2-5. Boatright

AO 72A
(Rev. 8/82)

had frequented the Convenience Store for several months because, according to Boatright, she was able to buy cigarettes there even though she was underage. Dkt. No. 93, ¶¶ 4-5. However, during this particular visit, the Indian male behind the counter "flirted" with Boatright. Dkt. No. 82, 11:1-2. As Boatright was about to leave, the Indian male told her to "hang on" and handed her a Marlboro Light cigarette box. Dkt. No. 92, ¶ 6. Marlboro Light was the brand of cigarette that Boatright typically purchased, however this package was unwrapped and Boatright had not paid for it. Dkt. No. 82, 11:7-9.

Boatright returned to her car and opened the cigarette box. Dkt. No. 93, ¶ 7. Inside the box was a plant bud, which looked like marijuana. Dkt. No. 93, ¶ 7. Boatright "freaked out" and immediately called Angie Cox, a family friend of Boatright's who previously worked at the Southeast Georgia Drug Task Force as a secretary. Dkt. No. 93, ¶¶ 8-10. Cox asked Boatright to come to Cox's hair salon, the Mop Shop, so the two could talk. Boatright told Cox about the incident at the Convenience Store and gave Cox the cigarette box with the purported marijuana. Dkt. No. 93, ¶¶ 8-10. Cox identified the bud as marijuana based on what she had seen while employed on the Southeast Georgia Drug Task Force. Dkt. No. 76, 36:8-9. Cox said it looked and smelt like marijuana. Dkt. No. 76, 36:12-14. Boatright's story alarmed Cox because Cox worried that the man in the Convenience

AO 72A
(Rev. 8/82)

Store "was trying to get [Boatright] in an altered frame of mind to take advantage of" a minor child. Dkt. No. 76, 46:6-13.

Cox subsequently called Officer John Bloodworth, an investigator with the Bacon County Sheriff's Office. Dkt. No. 93, ¶ 19. Cox had met Bloodworth when they both worked for the Southeast Georgia Drug Task Force in the 1990's. Dkt. No. 72, Ex. 11, 15:11-12. Bloodworth testified that they had an adulterous affair during the 1990's, but Cox specifically denied it. Dkt. No. 72, Ex. 11, 15:25; Dkt. No. 76, 20:7-11.

Officer Bloodworth drove to the Mop Shop Salon to speak with Cox. Whether Boatright was there when Officer Bloodworth arrived is unclear from the record. Officer Bloodworth testified that he could not remember when exactly he spoke with Boatright about the incident at the Convenience Store. See Dkt. No. 72, Ex. 11, 50:1-23. Cox thought that Boatright was still at the Mop Shop Salon when Officer Bloodworth arrived. Dkt. No. 76, 76:1. Boatright's best recollection was that she spoke with Officer Bloodworth at the Mop Shop Salon the same day as the incident, but she made a second trip to the salon to speak with Officer Bloodworth. Dkt. No. 82, 34:11-15, 40:21-23.

Cox told Officer Bloodworth that Boatright, a juvenile, had been to the Convenience Store when the young Indian man who owned the Convenience Store made implied sexual advances toward Boatright and handed her an unsealed cigarette box containing a

AO 72A
(Rev. 8/82)

marijuana bud. Dkt. No. 93, ¶ 20; Dkt. No. 72, Ex. 11, 27, 1-21. Officer Bloodworth inspected the cigarette box and the purported marijuana bud. Dkt. No. 93, ¶ 20. Cox informed Officer Bloodworth that neither she nor Boatright wanted to be identified in what might follow. Dkt. No. 82, 46:20-25.

Officer Bloodworth began conducting surveillance on the Convenience Store. Dkt. No. 93, ¶ 20. He observed a young Indian male behind the counter and a silver Acura parked in front of the store. Dkt. No. 93, ¶ 20. Dkt. No. 93, ¶ 20. Officer Bloodworth conducted a vehicle registration check and found that the silver Acura was registered to Plaintiff Atith Mehta. Dkt. No. 93, ¶ 20. Officer Bloodworth requested and received a copy of the Convenience Store's business license from the City of Alma Police Department and a copy of Mehta's Georgia driver's license, permanent resident card, and social security card. Dkt. No. 93, ¶ 20. The business license was "in the name of Atith Hiten Mehta." Dkt. No. 74, Ex. 5. Officer Bloodworth, however, did not enter the Convenience Store or speak with the young Indian male.

On each of the approximately three occasions Officer Bloodworth observed the Convenience Store, the Silver Acura was parked in front of the store and the same young Indian male was working. Dkt. No. 93, ¶ 20. At night, Officer Bloodworth had

AO 72A
(Rev. 8/82)

observed the Silver Acura parked down the street at the Sunset Inn. Dkt. No. 93, ¶ 20.

On the basis of this information, Officer Bloodworth applied for a search warrant for the Convenience Store. Dkt. No. 93, ¶ 20. In his affidavit accompanying the application, Officer Bloodworth described the incident with Boatright. See Dkt. No. 74, Ex. 5. However, as Boatright and Cox requested, neither of them were identified by name. See Dkt. No. 74, Ex. 5. Cox was described as a "concerned citizen" Officer Bloodworth had know for 15 years, who "ha[d] nothing to gain by giving the information and [was] gainfully employed." Dkt. No. 74, Ex. 5. A magistrate judge issued the search warrant, allowing Officer Bloodworth to search the Convenience Store and the silver Acura for "Marijuana, United States Currency, packaging materials, weighing devices, and other fruits pertaining to the sales and/or distribution of marijuana." See Dkt. No. 74, Ex. 5.

That same day Officer Bloodworth accompanied by Sheriff Foskey and other law enforcement officers went to the Convenience Store to execute the search warrant. Mehta was secured in the Convenience Store and shown the search warrant. Dkt. No. 93, ¶ 30. Mehta testified that he was kept outside of the Convenience Store during the search. Customers who approached the Convenience Store were not allowed to enter the

store or purchase gas while the search was ongoing.  Dkt. No.
76, Ex. 6.

Mehta testified that his cell phone was taken from him and,
because the phone rang frequently during the search, Officer
Bloodworth would from time to time ask Mehta who a particular
contact was and how he knew them.  Dkt. No. 92, ¶ 6.  Officer
Bloodworth asked Mehta for his laptop computer password, and
Mehta provided it.  Dkt. No. 92, ¶ 6.  Based on this, Mehta
suspected that Officer Bloodworth searched both his phone and
laptop computer.  Dkt. No. 92, ¶ 6.

Mehta also testified that, in response to Mehta's request
to speak with his attorney, either Officer Bloodworth or Sheriff
Foskey told him that if he talked to a lawyer, Mehta would "be
in trouble."  Dkt. No. 72, Ex. 6, 40:18-22.  According to Mehta,
Sheriff Foskey threatened Mehta by telling him he was "going to
have [Mehta] close down the store" and wanted to "make sure
[Mehta] moved out of [Foskey's] town."  Dkt. No. 72, Ex. 6,
42:14-17.  Mehta also stated that he was asked if the store had
video surveillance cameras, and if so, how to turn those cameras
off.  Dkt. No. 90, Ex. 3 ¶ 31.

A canine unit was called in to search the Convenience Store
and Mehta's silver Acura for drug odors, but the canine did not
alert.  Although no drugs were found, the officers seized
pornographic videos and magazines and $6,196 cash.  Dkt. No. 91,

AO 72A
(Rev. 8/82)

¶ 3.  The officers seized the pornography because they mistakenly believed the manner in which it was displayed violated a City of Alma ordinance.  Dkt. No. 78, 28:1-8.

Officer Bloodworth informed Mehta that the officers did not have a warrant to search the hotel room but asked Mehta for consent.  Dkt. No. 72, Ex. 6.  Officer Bloodworth told Mehta that if he did not consent, Officer Bloodworth would obtain a warrant in thirty minutes.  Dkt. No. 72, Ex. 6, 36:19-24.  Mehta signed and executed a Consent to Search Form.  Dkt. No. 93 ¶ 48.  No drugs were found and no evidence was seized from the hotel room.  Dkt. No. 93, ¶ 53.

Officer Bloodworth arrested Mehta and Mehta was later criminally charged in connection with the Boatright incident.  Dkt. No. 93, ¶ 64.  According to Mehta and the attorney Mehta retained to defend against his criminal prosecution, the Sheriff's Office offered to dismiss the criminal prosecution if Mehta allowed the Sheriff's Office to keep the cash seized.  Dkt. No. 91, ¶ 7.  After this offer was refused, the Sheriff's Office stated it would drop the criminal charges in exchange for half the cash seized.  Dkt. No. 91, ¶ 7.  Eventually the criminal prosecution was dismissed and all of the cash returned to Mehta because necessary witnesses, presumably Boatright and Cox, "decline[d] to prosecute."  Dkt. No. 90.

AO 72A
(Rev. 8/82)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

The only two remaining defendants in this case, Officer Bloodworth and Sheriff Foskey ("Defendants"), moved for summary judgment on all claims against them.

## I. False Arrest Claim

Defendants seek summary judgment on Mehta's Fourth Amendment false arrest claim. See Dkt. No. 74. Defendants assert that actual probable cause existed to justify the

warrantless arrest,[1] and even if it did not, there was at least arguable probable cause, such that they are entitled to qualified immunity.

"[T]he Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." Florida v. White, 526 U.S. 559, 565 (1999). Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)). Probable cause does not require certainty of guilt, only "a reasonable ground for belief of guilt." Maryland v. Pringle, 540 U.S. 366, 371 (2003). The existence of probable cause is determined objectively, "without regard to the law enforcement officers' subjective beliefs." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997).

Additionally, in § 1983 actions, officers are entitled to qualified immunity if "there was arguable probable cause for an arrest even if actual probable cause did not exist." Crosby, 394 F.3d at 1332; see also Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher

---

[1] At the time of the arrest, Defendants had a search warrant, but no arrest warrant.

standard of actual probable cause, governs the qualified
immunity inquiry.").

Here, at the time of Mehta's arrest, Officer Bloodworth (1)
had been informed that the young Indian male who owned the
Convenience Store had given a sixteen year old girl a marijuana
bud when she went into the store to buy cigarettes underage; (2)
Officer Bloodworth had been given the marijuana bud and,
although he had not tested it, he identified it as marijuana;
(3) he had observed only one Indian male working at the
Convenience Store; and (4) and had seen smoking pipes, which,
although legal to sell, could also be used to smoke marijuana.

Mehta emphasizes that the information Officer Bloodworth
received about the marijuana bud in the cigarette box was
second-hand because Officer Bloodworth did not interview
Boatright until after the arrest.  However, the record does not
fully support this assertion.  Officer Bloodworth testified that
he could not remember whether it was before or after the search
warrant that he spoke with Boatright.  Dkt. No. 72, Ex. 11,
50:1-23.  Both Boatright and Cox testified that Officer
Bloodworth spoke with Boatright the same day Boatright received
the marijuana bud, thus before the search warrant.   Dkt. No.
76, 76:1; Dkt. No. 82, 34:11-15, 40:21-23.  Plaintiffs attempt
to stretch Officer Bloodworth's statement that he did not

AO 72A
(Rev. 8/82)

remember when the conversation occurred into evidence that the conversation occurred before the search warrant.

However, even if Officer Bloodworth had not spoken with Boatright prior to the search warrant and resulting arrest, a reasonable officer in Defendants' position would have probable cause to arrest Mehta based on the information supplied by Cox. "In determining whether an informant's tip rises to the level of probable cause, [a court] assess[es] the totality of the circumstances." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (citations omitted). This Court must also "consider the relevance of factors such as the informant's 'veracity,' 'reliability,' and 'basis of knowledge.'" Id. (citations omitted).

Here, as Officer Bloodworth stated in his search warrant, he had known Cox for fifteen years. Dkt. No. 74, Ex. 5. While Cox did not have personal knowledge of the incident at the Convenience Store, she did have significant physical evidence, namely the marijuana bud in the cigarette box, which Officer Bloodworth was able to inspect.

Additionally, "the corroboration of the details of an informant's tip through independent police work adds significant value to the probable cause analysis." Id. Here, Officer Bloodworth, through an independent investigation, was able to

11

corroborate Cox's story to the extent that a young Indian male did in fact work at the Convenience Store and owned it.

On the basis of the information in Officer Bloodworth's possession, this Court holds that Defendants had probable cause to arrest Mehta for selling marijuana or selling cigarettes to a minor.[2]  See United States v. Vazquez, 406 F. App'x 430, 432 (11th Cir. 2010) (probable cause for warrantless arrest "based [solely] on information from a confidential informant, who had obtained cocaine previously from [the defendant] and who personally observed cocaine in the floorboard of [the defendant's] vehicle shortly before the arrest").  Officer Bloodworth had heard Boatright's account, received the actual drugs Boatright received, and saw someone matching Boatright's description at the location Boatright described.  Thus, Defendants are entitled to summary judgment on the federal false arrest claim.

## II. Unconstitutional Search Claims

In addition to the false arrest claim, Plaintiffs brought another type of Fourth Amendment claim, unlawful search and

---

[2] At the very least, Defendants had arguable probable cause to arrest Mehta.  Under similar circumstances, the Eleventh Circuit affirmed qualified immunity to a police officer on the basis of arguable probable cause.  In Williams v. Taylor-Lee, an arresting officer had arguable probable cause to arrest the plaintiff for terroristic threats when the officer had heard an account of the incident by the victim and, after travelling to the location described by the victim, found a woman matching the description given by the victim.  397 Fed. App'x 608, 609-610 (11th Cir. 2010).

seizure. This claim has three components, the search of the Convenience Store and the car with a warrant, the warrantless search of Mehta's hotel room, and the warrantless seizure of Plaintiffs' pornographic materials.

Plaintiffs argue that "Bloodworth included reckless and false statements and omissions in his application for the Search Warrant." See Dkt. No. 90 at 11. Presumably, the false statements Plaintiffs refer to are that Officer Bloodworth's affidavit referred to Mehta by name when describing the story provided by Cox and Boatright, when in fact, Boatright had only referred to him as the young Indian male working behind the counter. See Dkt. No. 74, Ex. 5; Dkt. No. 76, 44:14-17. Officer Bloodworth swore that "When the juvenile asked Atith Hiten Mehta for a pack of cigarettes, the Indian gave her a Marlboro light cigarette box, which contained a marijuana bud." Dkt. No. 74, Ex. 5. Plaintiffs argue that this statement was false because the information Officer Bloodworth received was that an Indian male had done that, not that Mehta had done that. Neither Cox not Boatright knew Mehta by name. Plaintiffs contend this substitution is significant because in fact, another Indian male, Vastal Pitwha, was working at the Convenience Store when Boatright came in. Dkt. No. 92, ¶ 2.

Presumably, the omission Plaintiffs refer to was that Officer Bloodworth did not include the fact that, during his

13

surveillance of the Convenience Store, he had not observed any incriminating or suspicious activity.

These "false statements" and "omissions," however, are not enough to invalidate the search warrant. "Negligent or innocent mistakes do not violate the Fourth Amendment." Maughon v. Bibb Cnty., 160 F.3d 658, 660 (11th Cir. 1998) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). "To invalidate a warrant based on incorrect information provided in a supporting affidavit one must show that officers intentionally or recklessly included false information or omitted necessary true information." Id.

Here, Officer Bloodworth's substitution of Mehta's name in place of "an Indian male" was, at the very most, a negligent mistake. Officer Bloodworth testified that Cox told him that the Indian male who *owned* the store gave Boatright the cigarette box. Dkt. No. 72, Ex. 11, 27, 1-21. The Convenience Store's business license was issued to an Atith Mehta and the silver Acura parked in front of the store was also registered to an Atith Mehta. Dkt. No. 74, Ex. 5. Thus, Officer Bloodworth was able to confirm Mehta as the owner of the Convenience Store, which was how the perpetrator was described to Officer Bloodworth. The copies of Mehta's Georgia driver's license, permanent resident card, and social security card all confirmed that Mehta was indeed a young Indian male. Dkt. No. 93, ¶ 20.

AO 72A
(Rev. 8/82)

Additionally, Officer Bloodworth had no reason to suspect that there was more than one Indian male that worked at the Convenience Store. Boatright's story did not include more than one Indian male, and, during the course of his investigation, Officer Bloodworth had only observed one Indian male working at the Convenience Store.

Officer Bloodworth's mistake, if it can even be called that, is similar to the officers' mistake in Maughon, where the § 1983 plaintiff alleged that the officers executing a search warrant failed to ascertain that someone else owned one half of the land to be searched. Id. Officer Bloodworth, like the officers in Maughon, is entitled to qualified immunity on this issue because inserting Mehta's name in place of "an Indian male" was at most a "negligent mistake." Id.; see also United States v. Shaw, 482 F. App'x 449, 452 (11th Cir. 2012) (officer's "poor choice of words" in stating that he had witnessed a drug buy in the defendant's house, when, in fact, the drug buy took place on a wheelchair ramp on the side of the defendant's bedroom, did not invalidate the warrant).

For an omission to invalidate a warrant, inclusion of the omitted information must result in "a lack of probable cause for issuance of the warrant[]." United States v. Novaton, 271 F.3d 968, 986-87 (11th Cir. 2001). In Shaw, the Eleventh Circuit held that omission of information that "tended to show" that a

AO 72A
(Rev. 8/82)

drug purchaser "was getting cocaine from [another] source," but "did not diminish the probable cause obtained during . . . previous purchases" was not necessary information. 482 F. App'x at 452. Likewise, while Officer Bloodworth's failure to uncover additional illegal actions tended to show that, perhaps, the alleged incident never took place, it did not diminish or eliminate the possibility that the earlier incident occurred. Therefore, it was not necessary information, which if included, would have destroyed probable cause.

Plaintiffs also contend that Mehta's Fourth Amendment rights were violated by Officer Bloodworth searching his cell phone and computer. Neither of these items were covered by the warrant. However, Defendants are entitled to qualified immunity on this claim because it had not been clearly established that searching those items violated federal law.

"Qualified Immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012)). "The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Id.

AO 72A
(Rev. 8/82)

(quoting Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable state official that his conduct was unlawful in the situation he confronted." Id. (emphasis in original and citations omitted). Only "binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose"—can create clearly establish rights. Coffin, 642 F.3d at 1013. Once a defendant has established that he was performing a discretionary function, the plaintiff bears the burden to show that the right was clearly established at the time of the violation. Barnes v. Zaccarri, 669 F.3d 1295, 1303 (11th Cir. 2012).

Here, Plaintiffs have not identified, and this Court has not found, any binding precedent establishing that searching a computer or cell phone while executing a search warrant violated the Fourth Amendment. Plaintiffs distinguished the case identified by Defendants, United States v. Allen, but did not cite any additional case law. 416 F. App'x 21, 27 (11th Cir. 2011). Allen dealt with warrantless searches of cell phones incident to arrest. See id. Allen noted that, as of January 2011, the legality of a warrantless search of a cell phone incident to arrest was "an unanswered question in this Circuit."

17

*Id.* Plaintiffs correctly assert that this case does not involve a search incident to arrest, but Plaintiffs have not elaborated on why, in this case, the Fourth Amendment right was clearly established as of January 2008. Because Defendants acted without the guidance of such case law, they are immune from liability.

Mehta also alleges that his Fourth Amendment rights were violated by the warrantless search of his hotel room. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). However, "[i]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Id.

In this case, it is undisputed that Mehta signed and executed a "Consent to Search" form to allow the officers to search his motel room. Mehta argues that this form was not effective because his consent was not voluntary.

Consent to a warrantless search is voluntary if it is the "product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).

18

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Id. at 227. The Eleventh Circuit has identified six factors, none of which are dispositive, in determining voluntariness. United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984). These factors are: (1) "the voluntariness of the [searched party's] custodial status," (2) "the presence of coercive police procedure," (3) "the extent and level of the defendant's cooperation with police," (4) "the [searched party's] awareness of his right to refuse consent to the search," (5) "the [searched party's] education and intelligence," and (6) "the defendant's belief that no incriminating evidence will be found." Id.

Applying those factors here, the final four factors favor Defendants, whereas the first two factors favor Mehta. However, given the coercive environment Mehta described, this Court finds that, if Mehta's testimony is true, the consent was involuntary.

As for the first factor, Mehta was in police custody and not free to leave. Dkt. No. 78, 19:6-12; Dkt. No. 81, 51:14-18. While he was not in handcuffs during the whole encounter, Mehta had been told as soon as the officers arrived that he would be arrested and, during the entire search, he was guarded by a police officer.

19

The second factor, coercive police procedure, also suggests Mehta's consent was involuntary. At the summary judgment phase, this Court cannot weigh evidence or make credibility determinations. Factual disputes must be resolved in favor of the non-moving party. Here, although disputed, Mehta's testimony includes several instances of coercive police behavior. Mehta stated that, after he requested to speak with an attorney, one of the Defendants denied that request and told him that "if he call[ed] up [his] lawyer, [Mehta would] be in trouble." Dkt. No. 72, Ex. 6, 40:18-22. According to Mehta, one of the Defendants also denied his requests to speak with his father and told him he "couldn't call up nobody [sic]." Dkt. No. 72, Ex. 6, 28:7-15. Sheriff Foskey allegedly told Mehta that he was going to "close down the store and make sure that [Mehta] move[d] out of [Foskey's] town." Dkt. No. 72, Ex. 6, 42:14-17. Mehta also states that an officer asked him if the Convenience Store had "inside video surveillance cameras" running, "and if so, how to turn them off." Dkt. No. 92, ¶ 7. Mehta was asked for consent after being detained for two to three hours. Dkt. No. 72, Ex. 6, 20:7-8. During that time, Mehta was unable to see inside the store because posters covered up most of the Convenience Store's windows. Dkt. No. 72, Ex. 6, 40:1-2. Numerous law enforcement officers participated in the search of the Convenience Store and approximately a dozen police

AO 72A
(Rev. 8/82)

vehicles surrounded the area.  Dkt. No. 72, Ex. 11, 78:5-15.

Also, when asking for consent, the officers told Mehta, if he

refused, the officers would have a warrant in thirty minutes.

Dkt. No. 72, Ex. 6, 36:19-24.

Mehta's contention that Defendants denied his request for

an attorney and told him that he would be "in trouble" if he

spoke to an attorney is disturbing.  The United States

Constitution requires that law enforcement officers honor an

individual's request for an attorney during custodial

interrogation.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

Here, Mehta was in custody and being subjected to questioning.

However, not only did Defendants deny Mehta's request but they

also threatened Mehta with additional consequences if Mehta did

speak with an attorney.  Cf. United State v. Boulette, 265 F.

App'x 895, 898-899 (11th Cir. 2008) (consent voluntary where

given after speaking with attorney for ten minutes).

While there is no constitutional right to speak with family

members, Mehta also contends that he was forbidden from speaking

with his father.  The Eleventh Circuit has indicated that

allowing a criminal defendant to speak with a family member

prior to consenting to a search weighs in favor of

voluntariness.  See United States v. Baker, 206 F. App'x 928,

930 (11th Cir. 2006) (consent voluntary when given after

consulting with wife); United States v. Williams, 199 F. App'x

21

828, (11th Cir. 2006) (same). Refusing such a request can contribute to an atmosphere of coercion. See United States v. Once Piece of Real Property Located at 58000 SW 74th Ave., Miami, Fla., 363 F.3d 1099 (11th Cir. 2004) (denying Government's unopposed motion for summary judgment in forfeiture action where criminal defendant's girlfriend stated that criminal defendant's request for a phone call was refused).

Likewise, Sheriff Foskey's statements to Mehta about ensuring that Mehta left Foskey's town were also coercive. The Eleventh Circuit has warned that an individual cannot be "intimidated or brow beaten into consenting to [a] search." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (finding consent voluntary when it resulted from a "low-key and professional" encounter with law enforcement officers); see also United States v. Smith, 199 F. App'x 759, (11th Cir. 2006) (consent after "polite and cooperative" interaction with police officers was voluntary).

In United States v. Welch, the Eleventh Circuit, in dicta, stated "a warning that social workers will come to care for children if their adult caregivers bec[a]me unavailable on account of detention is [not] necessarily an improperly coercive threat, as opposed to helpful information assuring that children will not be abandoned to the street." 683 F.3d 1304, 1309 n.20 (11th Cir. 2012). Here, in contrast, the statements made by

Defendants have no benign alternative meanings.  Sheriff Foskey

informing Mehta he wanted Mehta out of his town was in no way

"helpful information."  Id.  Nor could the statement that

speaking with an attorney would lead to "trouble" be anything

but threatening.

Standing alone, the presence of a large number of officers

or a lengthy search does not render consent involuntary.

However, when combined with other circumstances, these factors

suggest a coercive atmosphere.  See United States v. Boulette,

265 F. App'x 895 (11th Cir. 2008) ("Although we have deemed

nighttime searches more intrusive than daytime searches . . . a

search conducted late at night does not, standing alone, negate

the voluntariness of one's consent to search where the totality

of the circumstances demonstrates that consent was voluntary.");

United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986)

("The presence of a number of officers tends to suggest an

undertaking which is not entirely dependent on the consent and

cooperation of the suspect.").  Here, at least eleven officers

and a dozen or so law enforcement vehicles "converged" onto

Mehta's property.  Dkt. No. 72, Ex. 11, 78:5-15.  A canine unit

with a drug-sniffing dog was also called onto the scene.  And

the consent request came after Mehta had been forced to stand

outside for two to three hours while the officers searched the

Convenience Store.  Dkt. No. 72, Ex. 6, 20:7-8.

AO 72A
(Rev. 8/82)

In opposition to summary judgment, Mehta argues that Defendants' statement that if Mehta did not consent, they would obtain a warrant within thirty minutes, was coercive. That statement, however, unlike other statements Defendants made, was entirely permissible. Officers are free to inform an individual of their intent to seek a warrant if consent is refused. See Welch, 683 F.3d at 1309 (consent voluntary when officers said they would receive a warrant if consent was refused but that the warrant "would take a while"); United States v. Rios, 443 F. App'x 433, (11th Cir. 2011) (consent voluntary even though officers informed defendant that they would seek a warrant if he did not consent); United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989) (statement that officers would "dig up the place" if they came back with a warrant did not amount to coercion).

The next four factors, as opposed to the first two, all weigh in favor of Mehta's consent being voluntary. In terms of the third factor, Mehta did, to some extent, cooperate with the police. Mehta provided Bloodworth with his computer password. Dkt. No. 72, Ex. 6, 34. However, a small degree of cooperation alone does not require a finding of voluntariness. See State v. Davis, 404 S.E.2d 100 (Ga. 1991) (consent involuntary when, among other things, defendant's mother gave officers key to house after they informed her they would break down the door if she refused).

24

Mehta also presumably was aware that he had the right to refuse consent because the form he signed stated that he understood he had "the right to refuse to consent to the search described above and to refuse to sign [the] form." However, given that Defendants had ignored Mehta's request for a lawyer, Mehta may have reasonably believed his decision on the consent issue would also be ignored.

By all accounts, Mehta was well-educated and bright. He attended school both in the United States and India and had been successfully operating several businesses. Dkt. No. 72, Ex. 6, 6:8-9, 89:6-23.

The final factor—the consenting party's belief that no incriminating evidence will be found—also suggests voluntariness. Mehta testified that there was nothing in the hotel room he did not want the police officers to see. Dkt. No. 72, Ex. 6, 87:3-6; see also United States v. Purcell, 236 F.3d 1274, 1276 (11th Cir. 2001) (consent valid when, among other things, defendant stated that he consented because felt he had nothing to hide); United States v. Hildago, 7 F.3d 1566, 1568 (11th Cir. 1993) (same). Mehta's statement is supported by the fact that the search of the hotel room did not uncover any incriminating evidence.

In viewing the totality of the circumstances, this Court finds that Mehta's consent was not voluntarily. Because of the

25

coercive effect of a number of Defendants' actions, Mehta's consent was not the "product of an essentially free and unconstrained choice." Garcia, 890 F.2d at 360. Most of these actions are disputed, but, for the purposes of this Motion, this Court must credit Mehta's testimony.

Even though Mehta's consent was involuntary, Defendants could avoid liability if it was not clearly established that their actions violated federal law. However, given the egregious conduct Mehta testified to, no reasonable officer would conclude those actions were permissible. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." See Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted).

Well before January 2008, the United States Supreme Court had held that law enforcement officers must respect an individual's request for an attorney. See Edwards, 451 U.S. at 484-85. Not only did Defendants refuse Mehta's request, they threatened additional consequences should he exercise his rights. Furthermore, at the time Defendants acted, the Eleventh Circuit had found consent to be involuntary in circumstances less extreme than the present case. See United States v. Tovar-Rico, 61 F.3d 1529, 1535-36 (11th Cir. 1995); United States v.

Edmondson, 791 F.2d 1512, 1515-16 (11th Cir. 1986); United States v. Chemaly, 741 F.2d 1346, 1353 (11th Cir. 1984).

Specifically, the Eleventh Circuit's opinion in One Piece of Real Property provides considerable guidance. 363 F.3d 1099. In that case, the court denied the Government's unopposed motion for summary judgment in a forfeiture action. Id. at 1100. Based on the testimony of the property owner's girlfriend, the court found disputed issues of material fact. Id. The girlfriend deposed that the officers denied the property owner's repeated request for an attorney, refused to allow a phone call so that the property owner could obtain more clothing (at the time, he was dressed only in a towel), told the property owner that if he did not consent they would "tear his house apart and arrest his girlfriend," and that, when the property owner attempted to sign the blank indicating refusal of consent, the police stopped him and told him to sign elsewhere. Id. If true, the girlfriend's testimony indicated "that the search was not consensual and that its eventual occurrence was therefore, illegal." Id. at 1103.

The situation Mehta described strongly resembles the situation described by the deponent in One Piece of Real Property, which the Eleventh Circuit considered coercive. Mehta contends that, like the property owner in One Piece of Real Property, his repeated requests to speak with an attorney or a

family member were refused. Defendants stated that if Mehta did speak with an attorney, he would be in "trouble." Dkt. No. 72, Ex. 6, 40:18-22. Sheriff Foskey said that he wanted Mehta out of Foskey's "town," which correlates to the threat in One Piece of Real Property that the officers would "tear [the property owner's] house apart." Dkt. No. 72, Ex. 6, 42:14-17. Mehta was asked if the Convenience Store had running video surveillance cameras, and if so, how to turn them off. Dkt. No. 92, ¶ 7. The likely implication of this request was that the officers did not want documentary evidence of what was to follow. The situation in this case, like the situation in One Piece of Real Property, involved an element of humiliation; Officer Bloodworth had both Mehta's wallet and his cell phone and, when people called Mehta's cell phone, Officer Bloodworth would ask Mehta who these people were and how he knew them. Furthermore, Mehta was detained outside of the Convenience Store for two to three hours and had no knowledge of what was taking place inside because the Convenience Store windows were blocked by posters. Dkt. No. 72, Ex. 6, 20:7-8, 4-:1-2. A dozen law enforcement vehicles and a canine unit were on the scene, turning away customers who attempted to enter the Convenience Store's parking lot and gas pumps.

In sum, no reasonable officer would have believed that Mehta's consent was voluntary. Existing case law gave

Defendants "fair warning" of the unlawfulness of their conduct. Hope, 536 U.S. at 740 n.10. Accordingly, summary judgment on Mehta's claim relating to the search of the hotel room is denied.

### III. Unconstitutional Seizure of Pornography

Plaintiffs contend that the seizure of pornography from the Convenience Store violated the Plaintiffs' constitutional rights. This particular claim implicates both First and Fourth Amendment rights. Defendants argue that Plaintiffs' Complaint only included a claim that the seizure was made without pre-seizure judicial review and did not include a claim that the seizure was made without a warrant. While Plaintiffs did include a paragraph specific to pre-seizure judicial review, viewing Count III as a whole, it is clear that Plaintiffs also alleged the seizure was unlawful because it was warrantless. See Dkt. No. 1. Plaintiffs' incorporation of earlier paragraphs in the Count demonstrated that the Search Warrant related only to distribution of marijuana, and not pornography. See Dkt. No. ¶ 78. Plaintiffs specification of one aspect of the seizure they contend was unlawful, does not exclude other unlawful aspects.

In 2008, existing United States Supreme Court precedent clearly established that, at a minimum, a warrant was needed prior to the seizure of First Amendment-protected books and

29

magazines. "The First Amendment imposes special constraints on searches for and seizures of presumptively protected material and requires that the Fourth Amendment be applied with 'scrupulous exactitude' in such circumstances." Maryland v. Macon, 472 U.S. 463, 468 (1985) (citations omitted); see also Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 62-63 (1989) ("[T]his Court has repeatedly held that rigorous procedural safeguards must be employed before expressive materials can be seized as 'obscene.'"); Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 328 (1979) ("Courts will scrutinize any large-scale seizure of books, films, or other materials presumptively protected under the First Amendment . . . ."). "Consequently, the [United States Supreme] Court has imposed particularized rules applicable to searches for and seizures of allegedly obscene film, books, and papers." Maryland v. Macon, 472 U.S. 463, 468 (1985).

Supreme Court precedent clearly required that officers obtain a warrant before seizing First-Amendment protected materials, such as the books, DVDs, and magazines at issue here. Fort Wayne Books, 489 U.S. at 63 ("[W]hile the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause (and even without a warrant in various circumstances), it is otherwise when materials presumptively

30

protected by the First Amendment are involved."); Lo-Ji Sales, 442 U.S. at 326 n.5 ("[M]aterials [arguably protected by the First Amendment] normally may not be seized on the basis of alleged obscenity without a warrant."); Roaden v. Kentucky, 413 U.S. 496, 504 (1973) (stating that "the seizure of all the books in a bookstore . . . . without the authority of a constitutionally sufficient warrant[] is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards.").

The cases cited by Defendants are unavailing because those cases deal with when, after already securing a warrant, law enforcement must also secure a judicial finding of obscenity prior to seizure. See Heller v. New York, 413 U.S. 483 (1973) (stating that there is no absolute right to a prior adversary hearing where the allegedly obscene material is seized pursuant to a warrant to preserve material as evidence in a criminal prosecution); Wallace v. Wellborn, 204 F.3d 165, 166-67 (5th Cir. 2000) (officers obtained warrant prior to seizure but did not have a pre-seizure judicial determination of obscenity). Seizure of allegedly obscene books, DVDs, and magazines without a warrant was a clearly established constitutional violation in 2008. Accordingly, Defendants are not entitled to qualified immunity on this claim.

AO 72A
(Rev. 8/82)

Defendants assertion that the seizure of the books, magazines, and DVDs was justified under the plain view exception to the warrant requirement is also unpersuasive. The United States Supreme Court has repeatedly emphasized that the exceptions to the warrant requirement normally do not apply to First Amendment protected materials. See Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 63 (1989) ("[W]hile the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause (and even without a warrant in various circumstances), it is otherwise when materials presumptively protected by the First Amendment are involved."); Maryland v. Macon, 472 U.S. 463, 468 (1985) ("[T]he Court has imposed particularized rules applicable to searches for and seizures of allegedly obscene film, books, and papers."); Roaden v. Kentucky, 413 U.S. 496, 502 (1973) ("The seizure of instruments of a crime, such as a pistol or a knife, or 'contraband or stolen goods or objects dangerous in themselves are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under the Fourth or Fourteenth Amendment standards."). More specifically, the United States Supreme Court has addressed the application of the plain view exception to First Amendment materials. In Lo-Ji Sales, the Court stated that: "[O]f course, contraband may be

seized without a warrant under the 'plain view doctrine.' But we have recognized special constraints upon searches for and seizures of material arguably protected by the First Amendment; materials normally may not be seized on the basis of alleged obscenity without a warrant." 442 U.S. at 326 n.5 (citations omitted). Accordingly, summary judgment on this claim is inappropriate.

## IV. Federal Malicious Prosecution Claim

Mehta alleged that Defendants violated his Fourth Amendment rights by maliciously prosecuting him for distribution of marijuana. Complaint ¶ 91. The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). "[B]oth state and federal law help inform the elements of the common law tort of malicious prosecution, [but] a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met are controlled by federal law." Id. at 882. For a federal malicious prosecution claim arising from events in Georgia, the constituent elements are: "a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the

plaintiff accused." Id. The "existence of probable cause defeats a § 1983 malicious prosecution claim." Grider v. City of Aurburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010). Even in the absence of actual probable cause, arguable probable cause entitles a malicious prosecution defendant to qualified immunity. Id. at 1257.

Here, as discussed above, Defendants had both actual and arguable probable cause that Mehta distributed marijuana to a minor. Consequently, summary judgment on Mehta's federal malicious prosecution claim is appropriate.

## V. State Law Claims

Plaintiffs brought several state law claims—state law malicious prosecution, state law false imprisonment, intentional infliction of emotional distress, and negligent supervision and hiring. See Dkt. No. 1.

Defendants are entitled to summary judgment on Mehta's state law malicious prosecution and false arrest claims. Like its federal counterpart, Mehta's state law malicious prosecution fails because Defendants had probable cause to arrest and prosecute Mehta. Like federal law, Georgia law requires that a plaintiff demonstrate that the prosecution was "without probable cause." O.C.G.A. § 51-7-40. As discussed above, Defendants had probable cause. Likewise, want of probable cause is required for a false arrest claim in Georgia. See Adams v. Carlisle, 630

S.E.2d 529, 535-36 (Ga. Ct. App. 2006). Thus, this claim fails as well.

Additionally, Mehta's intentional infliction of emotional distress claim fails on the merits. To succeed on this claim, a plaintiff must prove (1) intentional or reckless conduct, (2) extreme and outrageous conduct, (3) a casual connection between the wrongful conduct and the emotional distress, and (4) severe emotional distress. Phinazze v. Interstate Nationlease, Inc., 514 S.E.2d 843, 844-45 (Ga. Ct. App. 1999). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id. (citations omitted). Georgia sets a high bar for the type of conduct that qualifies. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Bowers v. Estep, 420 S.E.2d 336, 339 (Ga. Ct. App. 1992). The conduct Mehta described falls short of the mark. Cf. Blanton v. Duru, 543 S.E.2d 448 (Ga. Ct. App. 2000) (trial court's award of damages for intentional infliction of emotional distress affirmed where foreclosure proceedings were instituted pursuant to security deed that the court had ordered to be canceled); Am. Finance & Loan Corp. v. Coots, 125 S.E.2d 689 (Ga. Ct. App.

AO 72A
(Rev. 8/82)

1962) (terrorizing frightened plaintiff at gunpoint in attempt to collect a bill actionable); Stephens v. Waits, 184 S.E. 781 (Ga. Ct. App. 1936) (allowing recovery where a defendant physically intimidated frightened mourners as they attempted to bury a family member at the cemetery).

Finally, summary judgment is appropriate on Plaintiffs' negligent hiring and supervision claims. To establish a negligent retention or supervision claim, the employer must have known or should have known that the employee "posed a risk of harm to others where it [was] reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." Drury v. Harris Ventures, Inc., 691 S.E.2d 356, 548 (Ga. Ct. App. 2010). Plaintiffs have failed to specify how Sheriff Foskey was negligent. The only evidence in the record about any of Officer Bloodworth's propensities is evidence on his propensity for extra-marital affairs. This, however, is clearly not the type of misconduct Plaintiffs complain of. See Alpharetta First United Methodist Church v. Stewart, 472 S.E.2d 532, 535 (Ga. Ct. App. 1996) (granting summary judgment because plaintiff failed to prove that the defendant knew of an employee's propensity to commit the type of misconduct at issue); Remediation Res., Inc. v. Balding, 635 S.E.2d 332, 335 (Ga. Ct. App. 2006) ("[A]

plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue.").

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment, Dkt. No. 74, is **GRANTED** in part and **DENIED** in part. Judgment as a matter of law is appropriate for all claims except Plaintiffs' claims relating to the search of his hotel room and the seizure of the pornographic materials.

**SO ORDERED**, this 7th day of March, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)